```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __7/2/2020__
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JANIS CHARLENE WILSON BAHAGA,                  :
                                               :
                             Plaintiff,        :
                                               :
            - against -                        :
                                               :
                                               :
COMMISSIONER OF SOCIAL SECURITY,               :
                                               :
                            Defendant.         :
-----------------------------------------------------------------X

19 Civ. 05014 (KPF) (RWL)

**ORDER**

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

On July 2, 2020, the Court issued its Report and Recommendation ("R&R") in this social security appeal. The Court previously had issued multiple extensions of Plaintiff's time to respond to the Commissioner's motion for judgment on the pleadings. The final deadline for any response was June 23, 2020. No response was filed. Accordingly, the Court issued its R&R. On the same day the opinion issued, however, the Court received the attached email from the New York County Lawyers Association (NYCLA), which previously had placed Plaintiff with pro bono counsel. In light of the information provided in that email, the Court sua sponte extends the time for the parties to object to the R&R to a total period of 28 days, during which time (1) NYCLA may attempt to locate Plaintiff and find new representation for Plaintiff, and (2) Plaintiff, whether pro se or represented by counsel, may make any application to the undersigned they believe is appropriate.

1

SO ORDERED.

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: July 2, 2020
     New York, New York

Copies transmitted to all counsel of record.  The Clerk's Office is directed to mail a copy
of this Order to Plaintiff at the following address and note service on the docket:

     Janis Charlene Wilson Bahaga
     1205 College Avenue, Apartment 6E
     Bronx, NY 10456



Begin forwarded message:

**From:** Anthe Maria Bova <abova@nycla.org>
**Date:** July 2, 2020 at 9:51:08 AM EDT
**To:** Bob Lehrburger
**Cc:** "alexander.broche@ssa.gov" <alexander.broche@ssa.gov>
**Subject: Mail Received by NYCLA for Civil Docket Case 1:19-cv-05014-KPF-RWL (Request for Extension)**

Good morning Judge Lehrburger,

I hope this email finds you well.  I received the attached last Friday when our administrative assistant went to our offices to check and scan the mail (our offices are still closed due to the pandemic circumstances).  Thank you very much for having your offices forward this.  Jonathan Garvin was referred this case some time ago (and has handled cases for us before), so of course we are very concerned to hear that he has not been in touch with the court for several months.  We have tried to contact Mr. Garvin, with no success.  We also tried contacting Ms. Wilson Bahaga, and have also not heard back from her.

Reviewing PACER I see that your Report and Recommendations have not yet been issued.  Understanding that I am not attorney of record, I respectfully request an extension of time to possibly find new representation for Ms. Wilson Bahaga.  Mr. Garvin has been a longtime member of NYCLA and it is unusual for him not to respond to us (or the court).  We fear something may have happened to him, and while we further investigate this, we do not want Ms. Wilson Bahaga's case to reach final determination without attempting to find her new counsel—and we know the clock is ticking.

Happy to discuss further, and thank you for your consideration.

Kind regards,

Anthe Maria Bova
General Counsel & Director of Pro Bono Programs
**New York County Lawyers Association**

14 Vesey Street
New York, NY 10007
Tel. (212) 267-6646 Ext. 236
Fax (212) 406-9252
abova@nycla.org

**Ahearn, Lisa (USANYS)**

| | |
|---|---|
| **From:** | NYSD_ECF_Pool@nysd.uscourts.gov |
| **Sent:** | Tuesday, June 02, 2020 3:41 PM |
| **To:** | CourtMail@nysd.uscourts.gov |
| **Subject:** | [EXTERNAL]   Activity in Case 1:19-cv-05014-KPF-RWL Wilson Bahaga v. Commissioner of Social Security Order |

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** There is no charge for viewing opinions.

## U.S. District Court

## Southern District of New York

### Notice of Electronic Filing

The following transaction was entered on 6/2/2020 at 3:40 PM EDT and filed on 6/2/2020

**Case Name:**      Wilson Bahaga v. Commissioner of Social Security
**Case Number:**    1:19-cv-05014-KPF-RWL
**Filer:**
**Document Number:** 34

**Docket Text:**
**ORDER: On May 18, 2020, the Court issued an order directing the Commissioner to provide written answers to certain questions. (Dkt. 29.) A copy of the order is attached. On June 1, 2020, the Commissioner filed answers to the questions. (Dkt. 33.) A copy of the Commissioner's letter is attached. If Plaintiff wishes to respond, any such response must be filed no later than June 23, 2020. Absent any response, the Court will proceed to render its Report and Recommendation on the current record. The Court also notes that Plaintiff's attorney of record has not been in communication with the Court for several months. The Commissioner is directed to serve, by June 5, 2020, a copy of this Order and its attachments by mail and email on Plaintiff's counsel of record and onPlaintiff directly at her last known address. SO ORDERED. (Signed by Magistrate Judge Robert W. Lehrburger on 6/02/2020) (ama)**

**1:19-cv-05014-KPF-RWL Notice has been electronically mailed to:**

Alexander Broche     alexander.broche@ssa.gov, NY.OGC.DOJ.SDNY@ssa.gov

Jonathan Fredric Garvin     garvinjonathan@gmail.com

**1:19-cv-05014-KPF-RWL Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:   6/2/2020
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

JANIS CHARLENE WILSON BAHAGA,                    :                    19 Civ. 5014 (KPF) (RWL)

                                    Plaintiff,                :

                                                             :

        - against -                                          :                    **ORDER**

                                                             :

COMMISSIONER OF SOCIAL SECURITY,                 :

                                                             :

                                    Defendant.   :
-------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

        On May 18, 2020, the Court issued an order directing the Commissioner to provide

written answers to certain questions.  (Dkt. 29.)  A copy of the order is attached.  On June

1, 2020, the Commissioner filed answers to the questions.  (Dkt. 33.)  A copy of the

Commissioner's letter is attached.  If Plaintiff wishes to respond, any such response must

be filed no later than June 23, 2020.  Absent any response, the Court will proceed to

render its Report and Recommendation on the current record.  The Court also notes that

Plaintiff's attorney of record has not been in communication with the Court for

several months.  The Commissioner is directed to serve, by June 5, 2020, a copy of this

Order and its attachments by mail and email on Plaintiff's counsel of record and on

Plaintiff directly at her last known address.

SO ORDERED.

_____

ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: June 2, 2020
       New York, New York

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __5/18/2020__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

JANIS CHARLENE WILSON BAHAGA,          :          19 Civ. 5014 (KPF) (RWL)

                       Plaintiff,          :

                              :

      - against -          :          **ORDER**

                              :

COMMISSIONER OF SOCIAL SECURITY,          :

                              :

                 Defendant.          :

-------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

      By June 1, 2020, the Commissioner shall file a letter addressing the following issue: The claimant identified at least the following treating doctors: Giovanni Franchin, Marta Sales, Ferdinand Banez, Arelene Tieng, and Upendar Bhatt. (See R. 525-26.) While the record contains opinions of eight consultative or agency physicians, there does not appear to be a medical source opinion from a treating physician in the record. Accordingly,

    1.    If there is a medical source opinion from a treating doctor in the record, identify where it appears in the record and identify the physician.

    2.    If there is no such opinion, identify what attempts were made to obtain a medical source opinion from a treating physician, particularly in regard to the mental health issues.

    3.    If there is no such opinion, explain and provide case law for why the case should not be remanded for failure to obtain or seek to obtain a medical source opinion from a treating physician.

4.      If there is a medical source opinion from a treating physician in the record,

explain and provide case law for why the case should not be remanded for

failure to accord proper weight to the treating physician.

Within three (3) days of the date of this order, the Government shall mail a copy of

this order to Plaintiff and file proof of such service on ECF.  If counsel is unable to

complete this mailing as a result of COVID-19 and related disruptions, counsel shall

promptly notify the Court by letter filed on ECF.


                        SO ORDERED.

                        _____
                        ROBERT W. LEHRBURGER
                        UNITED STATES MAGISTRATE JUDGE


Dated:  May 18, 2020
        New York, New York

Copies transmitted this date to all counsel of record.

Case 1:19-cv-05014-KPF-RWL   Document 33   Filed 06/02/20   Page 5 of 34



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*
*Civil Division*

*c/o Social Security Administration   tel: (212) 264-1331*
*Office of the General Counsel          fax: (212) 264-6372*
*26 Federal Plaza, Room 3904          Alexander.broche@ssa.gov*
*New York, New York 10278*

June 1, 2020

Via CM/ECF

Honorable Robert W. Lehrburger
United State Magistrate Judge
Daniel Patrick Moynihan Courthouse
500 Pearl St.
New York, New York 10007

    Re:    ***Wilson-Bahaga v. Saul*, 19-cv-05014-KPF-RWL**

Dear Judge Lehrburger:

This Office represents the Defendant, the Commissioner of Social Security ("Commissioner"), in the above-referenced action brought pursuant to 42 U.S.C. § 405(g), challenging a decision by the Commissioner to deny Plaintiff's application for benefits. The Commissioner writes in response to this Court's May 18, 2020 Order, directing the Commissioner to answer four inquiries.

As the Court notes, Plaintiff identified Drs. Giovanni Franchin, Ferdinand Banez, Arlene Tieng, and Upendar Bhatt as treating physicians. *See* CM/ECF No. 29, *referring* to Tr. 525-526.[1] The record contains numerous contemporaneous treatment notes from each of these doctors, as well as the opinions of seven consultative physicians. *See* Commissioner's Memorandum of Law in Support of His Motion for Judgment on the Pleadings ("C. Br.") 6-29. The Commissioner maintains that the totality of the evidence of record—including these sources' treatment notes, copious medical source opinion evidence, and Plaintiff's reported activities of daily living—constitute substantial evidence supporting Administrative Law Judge (ALJ) Hilton Miller's determination finding that Plaintiff was no longer disabled as of May 10, 2016. Furthermore, the

---

[1] Plaintiff also identified Marta Sales as a treating physician. However, this appears to be an error as Ms. Sales is a nurse practitioner. *See https://www.bronxcare.org/highlights/our-highlights*. Under the regulations in effect at the time of the ALJ's decision, nurse practitioners, like Ms. Sales, were not considered acceptable medical sources whose opinions were entitled to controlling weight. *See* 20 C.F.R. §§ 404.1513(a), (d)(1), 404.1527(a)(2), (c)(2), 416.913(a),(d)(2), 404.1527(a)(2), (c)(2) (2016).

decision is free of legal error, as the ALJ appropriately evaluated the evidence in accordance with the Commissioner's regulations and rulings in effect at the time of the ALJ's decision.[2]

**1.  If there is a medical source opinion from a treating doctor in the record, identify where it appears in the record and identify the physician.**

Dr. Banez's Global Assessment of Functioning (GAF) scores appear in the record at Tr. 547-548, 549-550, 557-558, and 562-567.[3] The regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgment about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis, and prognosis, what [she] can still do despite impairment(s), and [her] physical and mental restrictions. 20 C.F.R. 416.927(a)(2). GAF scores constitute medical source opinion evidence. *See Gonzalez v. Colvin,* No. 14-CV-06206, 2015 WL 1514972, at *18 (S.D.N.Y. Apr. 1, 2015) ("Generally, the guidance instructs ALJs to treat GAF scores as opinion evidence. . . . .") (internal citations omitted); *see also Tilles v. Comm'r of Soc. Sec.,* No. 13-CV-6743, 2015 WL 1454919, at *33 (S.D.N.Y. Mar. 31, 2015).

In April 2015, Dr. Banez opined that Plaintiff had a GAF score of 60 (Tr. 545-546), and that score improved to 65 at subsequent visits in May, August, September, and October 2015. A GAF score of 60 indicates moderate (nearly mild) difficulty in social, occupational or school functioning, while a GAF score of 65 denotes only mild symptoms or mild difficulty in social and occupational functioning, but the individual is generally functioning pretty well and has some meaningful interpersonal relationships. *See Global Assessment of Functioning, New York State Office of Mental Health, available at* https://www.albany.edu/counseling_center/docs/GAF.pdf. (last visited May 19, 2020). Tr. 547-548, 549-550, 557-558, 562-567. As explained in point 4 below, the ALJ appropriately considered this opinion evidence and accorded it some weight. *See* Tr. 22-23; C. Br. 6, 9.

In addition, consistent with Dr. Banez's GAF scores demonstrating improvement, Drs. Roomana Qayyum and Vicente Liz also provided GAF scores assessing Plaintiff's mental functioning. Tr. 684; Tr. 756, 887. Both Dr. Qayyum and Dr. Liz treated and examined Plaintiff only once at Bronx-Lebanon Hospital. *Id.* On March 25, 2017, Dr. Qayyum assessed a GAF score of 55. Tr. 684. One month later, on February 26, 2017, Dr. Liz assessed an improved GAF score of 61. Tr.

---

[2] On January 18, 2017, the Social Security Administration (the "agency") published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844; *see also* 82 Fed. Reg. 15132 (Mar. 27, 2017) (amending and correcting the final rules published at 82 Fed. Reg. 5844). These final rules are effective for claims filed under the Social Security Act on and after March 27, 2017, and do not apply to the administrative law judge's ("ALJ's") decision in this case.

[3] GAF scores, used in earlier versions of the American Psychiatric Association's, measured psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness. The GAF was a scale promulgated by the American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders* ("DSM") to assist 'in tracking the clinical progress of individuals [with psychological problems] in global terms.'" *Kohler v. Astrue,* 546 F.3d 260, 262 n.1 (2d Cir. 2008) (quoting DSM (4th ed. 2000)). A GAF score reports a clinician's judgment of an individual's overall level of functioning. DSM, 34 (4th ed. text revision 2000) (DSM-IV). The American Psychiatric Association dropped the GAF scale from its latest edition of the DSM. DSM-V at 16 (5th ed. text revision 2013).

2

Case 1:19-cv-05014-KPF-RWL   Document 33   Filed 06/02/20   Page 3 of 34

756, 887. The ALJ considered both these GAF scores and accorded them some weight as well. Tr. 21.

> **2.  If there is no such opinion, identify what attempts were made to obtain a medical opinion from a treating physician, particularly in regard to the mental health issues.**

As already noted, the record contains medical opinion evidence from Dr. Banez, Plaintiff's treating psychiatrist. In addition, the record reflects that the agency attempted to obtain medical evidence, including medical source opinion evidence, from Plaintiff's treating providers, and demonstrates that ALJ made substantial efforts to develop the record.

In this case, the ALJ took substantial steps to develop the record beyond the evidence supplied by Plaintiff and her representative. Specifically, medical evidence (including psychiatric evidence) was requested from Plaintiff's treating providers, including Bronx-Lebanon Hospital,[4] Promesa,[5] and the Arthur Avenue Health Clinic. *See* Requests for Medical Evidence, collectively attached here as Exhibit A, *repeated* at Tr. 604, 619; *see also* Tr. 541 (request for treatment records from Dr. Banez); Tr. 642 (request for medical evidence from Bronx Lebanon Hospital, where Drs. Franchin, Bhatt, Tieng, and Maheswara practiced); Tr. 809 (signed authorization to release medical records from Bronx-Lebanon Hospital). In addition, the record contains two Disability Worksheets, which detail the attempts made by the agency to procure medical evidence, including from Promesa and Bronx-Lebanon, and demonstrate that this evidence was made part of the record. *See* Tr. 447-553, 465-467.

These evidentiary requests demonstrate that the agency sought, *inter alia,* discharge summaries, pulmonary function summaries, and psychiatric records from Plaintiff's treating providers, *i.e.*, records that would inherently include statements reflecting judgments about the nature and severity of Plaintiff's impairments, such as statements about her symptoms, diagnosis, and prognosis, any restrictions, as well as functionality. *See* Tr. 541, 604. Indeed, the GAF opinions cited above were included in the record because of the agency's requests. Thus, in making these evidentiary requests, the agency attempted to obtain medical source opinion evidence from Plaintiff's providers. And the record contains hundreds of treatment notes from Plaintiff's mental and physical health providers, including those of Drs. Franchin, Banez, Tieng, and Bhatt. *See* Tr. 544, 546, 548, 550, 562, 567, 620, 645, 649, 652, 655, 664-668, 733, 791-794, 808, 863, 963, 985, 1012-1015, 1051.

The ALJ also ordered numerous consultative examinations to ensure that he had sufficient information to reach a disability determination, and appropriately considered those opinions along with Plaintiff's GAF scores assessed by Dr. Banez, her treating psychiatrist. Tr. 21-23; *see* 20 C.F.R. § 416.920 (b) (2) (iii) (listing consultative examinations as an appropriate means to resolve insufficiency in evidence).

---

[4] Plaintiff treated with Drs. Franchin, Tieng, Maheswara and Bhatt while at Bronx-Lebanon Hospital. *See, e.g.*, Tr. 605-607, 620, 645, 649, 652, 655, 656-658, 664-667, 733.

[5] Plaintiff attended medication management with psychotherapy at Promesa (also referred to as "Clay Avenue Health Center") with Dr. Banez. *See* Tr. 541-568; *see also* C. Br. 6-7.

In addition to referring Plaintiff for various consultative examinations, at the hearing, the agency also obtained testimony from two medical experts, Dr. Jurano Brooks and Dr. Sharon Keim, a practicing psychologist who had completed two post-doctorate degrees in narcotics and drug research and group therapy. C. Br. at 15; Tr. 61-67. Dr. Brooks opined that Plaintiff's lupus did not meet or equal any of the impairments listed in the Listings, and that she had no work-related functional limitations. Tr. 62-63. Dr. Brooks also considered whether any medical opinions in the record differed from his own, and he explained that the only inconsistency was between Dr. Long's May 2017 internal medicine consultative examination report, containing an opinion that Plaintiff had no limitations, and a concurrent functional assessment endorsing limitations in reaching, pushing, and pulling for which Dr. Brooks saw no explanation. *See* Tr. 63, *referring to* Tr. 707-717. Dr. Keim opined that Plaintiff's marijuana and alcohol use accounted for all of her psychological problems. Tr. 67. Dr. Keim further opined that without any drug or alcohol usage, Plaintiff would be able to complete simple, routine, and repetitive tasks with superficial contact with others. Tr. 66-67.

Thus, not only did the agency assist Plaintiff in attempting to develop a complete medical record, the ALJ also sought medical source opinion evidence from her treating providers and the opinions of experts to opine on her symptomology.

### 3.  Explain and provide case law for why the case should not be remanded for failure to obtain or seek to obtain a medical source opinion from a treating physician.

As noted, Dr. Banez's GAF scores in the record constitute medical opinion evidence, and the agency made numerous attempts to develop the record, including detailed record requests to Plaintiff's treatment providers. To the extent the Court is specifically inquiring about attempts to secure express function-by-function medical source opinion(s) or statement(s) from Plaintiff's treating physicians, the Commissioner respectfully submits that such efforts are not required by either the regulations or Second Circuit case law.

The regulations in effect at the time of the ALJ's decision required the ALJ to develop Plaintiff's "complete medical history" by making "every reasonable effort to help [Plaintiff] get medical evidence from" her treating sources; every reasonable effort means an initial request for the treating source evidence and a follow-up request if the evidence is not received within 10-20 days after the initial request. 20 C.F.R. § 416.912(b)(1)(i)-(ii). This duty extends to claimants who are represented, as Plaintiff was here. *See Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996); *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citations omitted). A complete medical history consists of the records and medical sources covering at least the 12 months preceding the month in which the claimant files an application for benefits. *See* 20 C.F.R. § 416.912(b); *Bushey v. Colvin*, 607 F. App'x 114, 115 (2d Cir. 2015).

Furthermore, the regulations in effect at the time of the ALJ's decision here did not provide that a medical report from an acceptable medical source should contain a statement about what the claimant could do, nor require the agency to request such a statement from a medical source who evaluated the claimant, including her treating sources. In fact, the regulations specified that the absence of a medical source statement about what the claimant could still do despite her impairments did not render a medical report incomplete. 20 C.F.R. §§ 404.15213(b)(6), 416.912(b)(6) (2016).

Nor has the Second Circuit required the agency to seek such statements where the record was sufficiently developed for the ALJ to make an informed decision. *See Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) ("where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim"); *Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013) ("Under these circumstances – especially considering that the ALJ also had all of the treatment notes from Pellam's treating physicians – we do not think that the ALJ had any further obligation to supplement the record by acquiring a medical source statement from one of the treating physicians" (citing *Rosa*)). On several occasions, the Second Circuit has reaffirmed that where the record is sufficiently developed to allow an ALJ to make an informed decision, an express function-by-function treating source opinion is not required. *See Monroe v. Comm' r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. Jan. 18, 2017); *Swiantek v. Comm'r of Soc. Sec.*, 588 F. App'x 82 (2d Cir. 2015); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33-34 (2d Cir. 2013); *see also Micheli v. Astrue*, 501 F. App'x 26, 29-30 (2d Cir. 2012) (ALJ properly determined he could render a decision based on 500-page record despite discrepancies in treating physician's opinion) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971)); *Streeter v. Comm'r of Soc. Sec.*, No. 5:07-cv-858 (FJS), 2011 WL 1576959, at *3 (N.D.N.Y. Apr. 26, 2011) ("[t]he lack of a medical source statement will not make the record incomplete, provided that the ALJ made his determination or decision based on 'sufficient' and 'consistent' evidence" (citations omitted)).

In *Monroe*, the Second Circuit upheld the ALJ's residual functional capacity (RFC) assessment despite the ALJ's rejection of the only medical source statement from the plaintiff's treating psychiatrist. 676 F. App'x at 8. Citing its prior holdings in *Tankisi*, 521 F. App'x 29, and *Pellam*, 508 F. App'x 87, the Court ruled that remand to secure another medical source statement or formal medical opinion as to the plaintiff's functionality was not required where the record contained sufficient evidence to assess the RFC, including "years' worth of treatment notes" from the treating psychiatrist and evidence of the plaintiff's varied social/recreational activities. *Id.* Here, as in *Monroe*, the record contained detailed, contemporaneous treatment records as well as multiple opinions from consultative examiners and testifying experts, and GAF score opinions from Plaintiff's treating psychiatrists, all of which were sufficient for the ALJ to assess Plaintiff's RFC.

Specifically, with respect to Plaintiff's alleged physical impairments, the ALJ considered the various treatment notes from Dr. Franchin (Tr. 20-21), reflecting that Plaintiff's lupus was stable and controlled, as well as Dr. Tieng's treatment note from a May 2016 visit reflecting that Plaintiff was pleasant and reported no tender joints, no rashes, no bursitis, and no swollen joints or joint pain. Tr. 620; *see also* C. Br. 10.[6] Plaintiff's repeated physical examinations revealed largely normal findings (Tr. 605-607, 620-626, 648, 708-714, 1051), including an April 2016 discharge note relating to Plaintiff's lupus stating that she could return to physical activity by April 30, 2016. *See* Tr. 599; C. Br. 22-26. Plaintiff repeatedly exhibited full range of motion throughout her body, and she consistently had full muscle strength, sensation, and grip strength. Tr. 572, 709, 741, 816, 955. The examinations consistently revealed normal gait and ambulation (Tr. 571, 610, 624, 708, 899, 1023) and no swelling in her joints (Tr. 620, 645, 668, 709, 1051).

---

[6] Dr. Franchin—Tr. 645, 663-664, 665-667, 791-794, 1051; Dr. Tieng—Tr. 620, 668.

Indeed, Plaintiff often reported to treating and/or other medical sources that she was doing better, well, or "okay" (Tr. 786, 982, 1051, 1084) and that she enjoyed going on walks (Tr. 1031) and running (Tr. 595). She even mentioned during counseling that she was looking for sober peers to go to the gym with. Tr. 1057. Plaintiff also reported no limitations in reaching or using her hands. Tr. 444.

With respect to Plaintiff's mental impairments, the record contains contemporaneous treatment notes from Drs. Banez and Bhatt, which the ALJ considered in assessing Plaintiff's RFC. As the ALJ observed, the medical evidence reveals that while sober, Plaintiff's mental status examination findings were repeatedly unremarkable after the comparison point decision, and even after the May 10, 2016 alleged disability onset date. (See Tr. 21). Indeed, clinical observations revealed that while Plaintiff was sober, her mood was "okay" with a congruent affect, and she had coherent thought process, normal thought content, intact memory, good or intact attention, concentration, cognition, insight, and judgment, and normal reasoning. *Compare* treatment observations while sober, Tr. 562-564, 646, 697, 786, 787-790, 829, 825, 852, 1068, 1070, 1076, 1084, *with* treatment observations while intoxicated, Tr. 670-679, 735-762, 828; *see also* C. Br. at 23-26. Indeed, Plaintiff's treating psychiatrist, Dr. Bhatt, repeatedly noted that while sober, she was "psychiatrically stable." Tr. 650-652, 656-661, 787-790, 982-985, 1081. Her mental status examinations while intoxicated present a stark difference from those when she was sober, which is consistent with the ALJ's determination that Plaintiff's substance abuse is a material contributing factor in determining her disability. *See* Tr. 18-22. Moreover, a comparison of Plaintiff's mental status examinations while intoxicated with those while she was sober demonstrates that her mental impairments met the requirements of Listing 12.03 while intoxicated but not while sober. Tr. 15-16, 65-68; *see* 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 12.03.

Furthermore, at the hearing, Plaintiff made no mention of any limitations relating to her mental impairments; she explained that she believed she was disabled because of her lupus. Tr. 60 ("Please explain why you feel you are disabled?" "I have Lupus since 2009 . . . ."); *see White v. Berryhill*, 753 F. App'x 80, 81 (2d Cir. 2019) (affirming the ALJ's decision where the plaintiff never specified how a condition (obesity) limited his functioning (citation omitted)). Indeed, Plaintiff's varied activities further support the ALJ's decision. Specifically, Plaintiff reported that she enjoyed reading, watching movies and television, doing word puzzles, and playing chess—activities that are commensurate with a level of mental functionality compatible with simple, unskilled medium work. Tr. 571, 595, 884. Similarly, Plaintiff regularly attended her appointments (Tr. 646, 650, 731), was capable of taking public transportation (Tr. 442, 589, 595, 1033), shopped (Tr. 595), interacted with her peers, and actively participated in group and individual counseling (Tr. 1046-1067).

The medical opinion evidence further supported the ALJ's determination. *See* Tr. 22. State agency physician Dr. R. Gauthier, on May 10, 2016—the date medical improvement was found to have occurred—reviewed Dr. Dipti Joshi's findings and conclusions upon the March 2016 internal medicine consultative examination, among other evidence. Dr. Gauthier opined that Plaintiff had no limitations, had demonstrated significant physical improvement, and was no longer disabled. Tr. 613-618; *see* Tr. 570-763. Dr. Joshi observed that Plaintiff's gait was

normal, she was in no acute distress, she could walk on her heels and toes without difficulty, her squat was full, and her stance was normal. Tr. 571. Dr. Joshi further noted that Plaintiff exhibited full (5/5) strength in her upper and lower extremities, full grip strength, and full range of motion throughout, and no sensory deficits or muscle atrophy were present. Tr. 572. Similarly, the medical expert in internal medicine, Dr. Jurano Brooks, testified at the August 7, 2018 administrative hearing that Plaintiff's physical impairments were not severe, did not meet the requirements of a Listing-level impairment, and would not result in any work-related functional limitations. Tr. 62-63. Dr. Carol McLean Long, who also conducted an internal medicine examination less than a year later in May 2017, likewise opined that Plaintiff had no physical limitations. Tr. 710.

As to Plaintiff's psychiatric impairments, State agency psychologist Dr. T. Harding, after reviewing the available evidence, opined in April 2016 that Plaintiff largely had no significant limitations, or at most no more than moderate limitations, in her ability to sustain concentration and persistence, adapt, or interact socially. Tr. 588-589. Dr. Harding, like Dr. Gauthier, reached the conclusion that Plaintiff had demonstrated significant medical improvement and was no longer disabled after reviewing all the evidence in her file and comparing it with the comparison point decision (CPD) of April 8, 2011. Tr. 102-112, 590.

Thus, as in *Monroe,* the record here contained sufficient evidence for the ALJ to assess Plaintiff's RFC. *See Monroe,* 676 F. App'x at 5-8. Indeed, the Second Circuit has affirmed an ALJ's decision where, as here, the record contains consultative findings consistent with the ALJ's conclusions, even where the claimant alleged a failure to request records from a treating medical source. *Pellam,* 508 F. App'x at 90 n.2 ("Because [the consultative examiner's] opinion was largely consistent with the ALJ's conclusions, we need not decide whether a record would be rendered incomplete by the failure to request a medical source opinion from a treating physician if the ALJ made his residual functional capacity determination without the support of any expert medical source opinion concerning the claimant's limitations."). Therefore, the ALJ adequately developed the record in this case.

### 4. If there is a medical source opinion from a treating physician, explain why the case should not be remanded for failure to accord proper weight to it

As noted, Dr. Banez's GAF scores in the record constitute medical opinion evidence. The ALJ properly accorded *some* weight to Dr. Banez GAF scores. Tr. 22-23. Dr. Banez assessed Plaintiff with GAF scores ranging from 60 in April 2015, to 65 in May, August, September, and October 2015. *See* C. Br. 6, 9; Tr. 545-546, 547-548, 549-550, 557-558, 562-567. These GAF scores denote mostly mild symptomology consistent with the RFC finding. Dr. Banez's score denoting improvement, are also largely consistent with the GAF scores of Drs. Qayyum and Liz, which similarly show improvement within a month. *See* Tr. 21-23, 684, 756, 887.

The ALJ properly accorded only some weight to the GAF scores because they were vague and simply a snapshot assessment of Plaintiff's overall mental health. Tr. 21-23; *see Kaczkowski v. Colvin,* No. 15 CIV. 9356 (GWG), 2016 WL 5922768, at *20 (S.D.N.Y. Oct. 11, 2016) (ALJ finding giving GAF score limited weight was appropriate, in part, because a "GAF score is merely a "snapshot opinion . . . at a specific point in time," while "[a] determination of disability

must be based on the entire record" (internal citations omitted)); *Velez v. Colvin*, No. 15-CV-0487, 2015 WL 8491485 at \*9 (S.D.N.Y. 2015) (GAF score is merely a snapshot opinion of one or more doctors as to an individual's level of social, psychological and occupational function at a specific point in time[,]" whereas "[a] determination of disability must be based on the entire record" (internal citations omitted)); *see also Rock v. Colvin*, 628 F. App'x 1, 4 n.3 (2d Cir. 2015) (reliability of GAF scores questioned by numerous courts both before and after the GAF scale was removed from the DSM).

The Commissioner also notes that Dr. Bhatt completed a wellness plan report on September 7, 2017, in which, consistent with the ALJ's decision, he checked a box noting that Plaintiff's depression, bipolar disorder, and lupus were resolved or stabilized. However, Dr. Bhatt did not render an assessment of Plaintiff's functional capacity, Tr. 798-801, and thus it was not a medical opinion that the ALJ was required to weigh as such.

*** 

In sum, the ALJ properly considered the record as a whole and the relevant regulatory factors in evaluating Plaintiff's disability claim. Remand is not required in this case because the ALJ already possessed a "complete medical history," and was under no obligation to seek additional information. *See Rosa*, 168 F.3d at 79 n.5. Accordingly, the Commissioner respectfully requests that the Court grant his motion for judgment on the pleadings, and affirm his final decision. In addition, the ALJ's determination is entitled to deference, as it is the function of the ALJ to weigh the evidence in the record and appraise the statements of witnesses, including Plaintiff. *See Biestek v. Berryhill*, – U.S. –, 139 S. Ct. 1148, 1154 (2019) "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high."); *Halloran v. Barnhart*, 362 F.3d 28, at 31 (2d Cir. 2004); *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 113 (2d Cir. 2010).

We thank the Court for its consideration of this letter.

Respectfully submitted,

Geoffrey S. Berman
United States Attorney

/s/     *Alexander Broche*
Alexander Broche
Special Assistant United States Attorney
tel. (212) 264-1331
fax (212) 264-6372
alexander.broche@ssa.gov

cc:    Jonathan Garven, Esq (via CM/ECF)
       Plaintiff's *Pro Se* Counsel

       Janis Wilson-Bahaga (via U.S.P.S. (first class))
       *Plaintiff Pro Se*

# EXHIBIT A

**New York State Office of Temporary and Disability Assistance**
**Division of Disability Determinations**

Request #: H00494553
Date: 04/18/17

Request for Medical Field Contact
To: Medical Relations Officer – Region: 3

From: E. Sousa
7 / B 001 / 3865          Tel: (607)741-4109

Claimant Name:  JANIS C. WILSON BAHAGA
SSN:  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

DOB: 05/19/81

Address:  1205 COLLEGE AVE #6E
BRONX, NY 10456

Facility:  BRONX LEBANON HOSPITAL CTR          ID Number at Facility:
1650 GRAND CONCOURSE          0293-7494
I/P - O/P RECORDS
BRONX, NY  10457

| INPATIENT DATES | OUTPATIENT |
|---|---|
| 03/29/10 - 04/18/17<br>00/00/00 - 00/00/00 | Clinic(s) Attended: ALL CLINICS |
| | Date First Seen: 03/29/10 / Most Recent: Present |

**ALLEGATIONS:**                                **ALLEGED ONSET DATE:** 00/00/00
LUPUS AND LUPUS FLARES
ARTHRITIS, HBP

**AKA & PREVIOUS ADDRESS**

### MEDICAL INFORMATION REQUESTED
**NOTE TO FACILITY/VENDOR:** FIELD REP IS ONLY AUTHORIZED TO REMOVE ENCRYPTED, ELECTRONICALLY CAPTURED RECORDS FROM SITE IN ACCORDANCE WITH THIS REQUEST FORM. PAPER RECORDS SHOULD ONLY BE IMAGED BY THE FIELD REP ON SITE, AND SHOULD NOT BE TAKEN OFF SITE!

| | | | | | | |
|---|---|---|---|---|---|---|
| PULM-FUNC: | | DISCH SUMM: | X | PSYCHIATRIC: | X | |
| ADM-HIST: | X | EYE EXAM: | | AUDIO TESTING: | | |
| ER RECORDS: | X | EKG: | | OPER-NOTES: | | |
| EEG REPORT: | | PSYCH. TESTING: | X | URINALYSIS: | X | |
| X-RAY REPORTS: | All IMAGING | BLOOD CHEM: | X | PATH REPORTS: | X | |
| IEP: | | CLINIC NOTES: | X | SPEECH & LANG: | | |
| PHYSICAL: | X | EDUCATIONAL: | | | | |

PLS SEND TEST,CLINIC,CONSULT, PROCEDURE REPORTS.
PLS SEND IN/OUTPT TX/PROG NOTES, & MED/PSYCH RECS. THANKS.

AUTHORIZATION ON FILE

FIELD ANALYST RESPONSE/REMARKS

Status _____  Date: _____  Scanned by _____  Pages ____

**New York State Office of Temporary and Disability Assistance**
**Division of Disability Determinations**

Request #: H00459A08
Date: 06/03/16

Request for Medical Field Contact
To: Medical Relations Officer – Region: 3

From: B. Slater
7 / A 001 / 9251          Tel: (607)741-4041

Claimant Name: JANIS C. WILSON BAHAGA
SSN: 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

DOB: 05/19/81

Address: 1205 COLLEGE AVE
APT 6E
BRONX, NY 10456

Facility: BRONX LEBANON HOSPITAL CTR        ID Number at Facility:
1650 GRAND CONCOURSE                         0293-7494
I/P – O/P RECORDS
BRONX, NY 10457

| INPATIENT DATES | OUTPATIENT | |
|---|---|---|
| 04/28/16 – 05/19/16<br>00/00/00 – 00/00/00 | Clinic(s) Attended: | |
| | Date First Seen:   /   / | Most Recent:   /   / |

**ALLEGATIONS**:                                    **ALLEGED ONSET DATE:** 00/00/00
lupus, arthritis, htn

**AKA & PREVIOUS ADDRESS**

### MEDICAL INFORMATION REQUESTED

**NOTE TO FACILITY/VENDOR**: FIELD REP IS <u>ONLY</u> AUTHORIZED TO REMOVE ENCRYPTED, ELECTRONICALLY CAPTURED RECORDS FROM SITE IN ACCORDANCE WITH THIS REQUEST FORM. PAPER RECORDS SHOULD <u>ONLY</u> BE IMAGED BY THE FIELD REP ON SITE, AND SHOULD NOT BE TAKEN OFF SITE!

| PULM-FUNC: | | DISCH SUMM: | X | PSYCHIATRIC: | X |
|---|---|---|---|---|---|
| ADM-HIST: | X | EYE EXAM: | | AUDIO TESTING: | |
| ER RECORDS: | | EKG: | | OPER-NOTES: | X |
| EEG REPORT: | | PSYCH. TESTING: | X | URINALYSIS: | X |
| X-RAY REPORTS: | All | BLOOD CHEM: | X | PATH REPORTS: | X |
| IEP: | | CLINIC NOTES: | X | SPEECH & LANG: | |
| PHYSICAL: | | EDUCATIONAL: | | | |

Clmt was in ER 4/28/16 and saw Dr. Tieng on May 19, 2016

AUTHORIZATION ON FILE

FIELD ANALYST RESPONSE/REMARKS

Status _____      Date: _____   Scanned by _____   Pages _____

BRONX LEBANON HOSPITAL CTR
med recs
1650 GRAND CONCOURSE
I/P - O/P RECORDS
BRONX, NY  10457

Form Approved
OMB.No. 0960-0623

**WHOSE** *Records to be Disclosed*

| NAME *(First, Middle, Last, Suffix)* | | |
|---|---|---|
| Janis Charlene Wilson Bahaga | | |
| SSN    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 | Birthday *(mm/dd/yy)* | 05/19/81 |

# AUTHORIZATION TO DISCLOSE INFORMATION TO THE SOCIAL SECURITY ADMINISTRATION (SSA)

**\*\* PLEASE READ THE ENTIRE FORM, BOTH PAGES, BEFORE SIGNING BELOW \*\***

**I voluntarily authorize and request disclosure** (including paper, oral, and electronic interchange):

**OF WHAT**   *All my medical records; also education records and other information related to my ability to perform tasks. This includes specific permission to release:*

1. All records and other information regarding my treatment, hospitalization, and outpatient care for my impairment(s) *including,* and **not limited to**:
   - Psychological, psychiatric or other mental impairment(s) (excludes "psychotherapy notes" as defined in 45 CFR 164.501)
   - Drug abuse, alcoholism, or other substance abuse
   - Sickle cell anemia
   - Records which may indicate the presence of a communicable or noncommunicable disease; and tests for or records of HIV/AIDS
   - Gene-related impairments (including genetic test results)
2. Information about how my impairment(s) affects my ability to complete tasks and activities of daily living, and affects my ability to work.
3. Copies of educational tests or evaluations, including Individualized Educational Programs, triennial assessments, psychological and speech evaluations, and any other records that can help evaluate function; also teachers' observations and evaluations.
4. Information created within 12 months after the date this authorization is signed, as well as past information.

**FROM WHOM**

- **All medical sources** (hospitals, clinics, labs, physicians, psychologists, etc.) including mental health, correctional, addiction treatment, and VA health care facilities
- All educational sources (schools, teachers, records administrators, counselors, etc.)
- Social workers/rehabilitation counselors
- Consulting examiners used by SSA
- Employers, insurance companies, workers' compensation programs
- Others who may know about my condition (family, neighbors, friends, public officials)

**THIS BOX TO BE COMPLETED ONLY BY SSA/DDS (as needed)** Additional information to identify the subject (e.g., other names used), the specific source, or the material to be disclosed:

**TO WHOM**   The Social Security Administration and to the State agency authorized to process my case (usually called "disability determination services"), **including contract copy services, and doctors or other professionals consulted during the process.** [Also, for international claims, to the U.S. Department of State Foreign Service Post.]

**PURPOSE**   Determining my **eligibility for benefits**, including looking at the combined effect of any impairments that by themselves would not meet SSA's definition of disability; and whether I can manage such benefits.

☐ Determining whether I am **capable of managing benefits ONLY** (check only if this applies)

**EXPIRES WHEN**   This authorization is good for 12 months from the date signed (below my signature).

- I authorize the use of a copy (including electronic copy) of this form for the disclosure of the information described above.
- I understand that there are some circumstances in which this information may be redisclosed to other parties (see page 2 for details).
- I may write to SSA and my sources to revoke this authorization at any time (see page 2 for details).
- SSA will give me a copy of this form if I ask; I may ask the source to allow me to inspect or get a copy of material to be disclosed.
- **I have read both pages of this form and agree to the disclosures above from the types of sources listed.**

**PLEASE SIGN USING BLUE OR BLACK INK ONLY** | **IF not signed by subject of disclosure, specify basis for authority to sign**

**INDIVIDUAL authorizing disclosure**   ☐ Parent of minor   ☐ Guardian   ☐ Other personal representative (explain)

**SIGN** ▶ *Electronically Signed By:*
Janis Charlene Wilson Bahaga

(Parent/guardian/personal representative sign here if two signatures required by State law) ▶

| Date Signed | Street Address | | |
|---|---|---|---|
| 05/16/16 | 1205 COLLEGE AVE APT 6E | | |
| Phone Number (with area code) | City | State | ZIP |
| 718-538-7807 | BRONX | NY | 10456 |

**WITNESS** *I know the person signing this form or am satisfied of this person's identity:*

**SIGN** ▶ *Attested by SSA or Designated State Agency Employee:*
C White

IF needed, second witness sign here (e.g., if signed with "X" above)
**SIGN** ▶

| Phone Number (or Address) | Phone Number (or Address) |
|---|---|
| 855-531-1684 BRONX NY 10451-3528 | |

*This general and special authorization to disclose was developed to comply with the provisions regarding disclosure of medical, educational, and other information under P.L. 104-191 ("HIPAA"); 45 CFR parts 160 and 164; 42 U.S. Code section 290dd-2; 42 CFR part 2; 38 U.S. Code section 7332; 38 CFR 1.475; 20 U.S. Code section 1232g ("FERPA"); 34 CFR parts 99 and 300; and State law.*

**Explanation of Form SSA-827,**
## "Authorization to Disclose Information to the Social Security Administration (SSA)"

We need your written authorization to help get the information required to process your application for benefits, and to determine your capability of managing benefits. Laws and regulations require that sources of personal information have a signed authorization before releasing it to us. Also, laws require specific authorization for the release of information about certain conditions and from educational sources.

You can provide this authorization by signing a Form SSA-827. Federal law permits sources with information about you to release that information if you sign a single authorization to release all your information from all your possible sources. We will make copies of it for each source. A few States, and some individual sources of information, require that the authorization specifically name the source that you authorize to release personal information. In those cases, we may ask you to sign one authorization for each source and we may contact you again if we need you to sign more authorizations.

You have the right to revoke this authorization at any time, except to the extent a source of information has already relied on it to take an action. To revoke, send a written statement to any Social Security Office. If you do, also send a copy directly to any of your sources that you no longer wish to disclose information about you; SSA can tell you if we identified any sources you didn't tell us about. Information disclosed prior to revocation may be used by SSA to decide your claim.

It is SSA's policy to provide service to people with limited English proficiency in their native language or preferred mode of communication consistent with Executive Order 13166 (August 11, 2000) and the Individuals with Disabilities Education Act. SSA makes every reasonable effort to ensure that the information in the SSA-827 is provided to you in your native or preferred language.

## IMPORTANT INFORMATION, INCLUDING NOTICE REQUIRED BY THE PRIVACY ACT

All personal information collected by SSA is protected by the Privacy Act of 1974. Once medical information is disclosed to SSA, it is no longer protected by the health information privacy provisions of 45 CFR part 164 (mandated by the Health Insurance Portability and Accountability Act (HIPAA). SSA retains information in strict adherence to the retention schedules established and maintained in conjunction with the National Archives and Records Administration. At the end of a record's useful life cycle, it is destroyed in accordance with the privacy provisions, as specified in 36 CFR part 1228.

SSA is authorized to collect the information on form SSA-827 by sections 205(a), 223 (d)(5)(A),1614(a)(3)(H)(i), 1631(d)(1) and 1631 (e)(1)(A) of the Social Security Act. We use the information obtained with this form to determine your eligibility for benefits, and your ability to manage any benefits received. This use usually includes review of the information by the State agency processing your case and quality control people in SSA. In some cases, your information may also be reviewed by SSA personnel that process your appeal of a decision, or by investigators to resolve allegations of fraud or abuse, and may be used in any related administrative, civil, or criminal proceedings.

**Signing this form is voluntary, but failing to sign it, or revoking it before we receive necessary information, could prevent an accurate or timely decision on your claim, and could result in denial or loss of benefits.** Although the information we obtain with this form is almost never used for any purpose other than those stated above, the information may be disclosed by SSA without your consent if authorized by Federal laws such as the Privacy Act and the Social Security Act. For example, SSA may disclose:

1. To enable a third party (e.g., consulting physicians) or other government agency to assist SSA to establish rights to Social Security benefits and/or coverage;
2. Pursuant to law authorizing the release of information from Social Security records (e.g., to the Inspector General, to Federal or State benefit agencies or auditors, or to the Department of Veterans Affairs(VA));
3. For statistical research and audit activities necessary to assure the integrity and improvement of the Social Security programs (e.g., to the Bureau of the Census and private concerns under contract with SSA).

Other than the above limited circumstances, SSA will not redisclose without proper prior written consent information (1) relating to alcohol and/or drug abuse as covered in 42 CFR part 2, or (2) from educational records for a minor obtained under 34 CFR part 99 (Family Educational Rights and Privacy Act (FERPA)), or (3) regarding mental health, developmental disability, AIDS or HIV.

We may also use the information you give us when we match records by computer. Matching programs compare our records with those of other Federal, state, or local government agencies. Many agencies may use matching programs to find or prove that a person qualifies for benefits paid by the Federal government. The law allows us to do this even if you do not agree to it.

Explanations about possible reasons why information you provide us may be used or given out are available upon request from any Social Security Office.

## PAPERWORK REDUCTION ACT STATEMENT

This information collection meets the clearance requirements of 44 U.S.C. section 3507, as amended by section 2 of the Paperwork Reduction Act of 1995. You do not need to answer these questions unless we display a valid Office of Management and Budget control number. We estimate that it will take about 10 minutes to read the instructions, gather the facts, and answer the questions. **SEND OR DELIVER THE COMPLETED FORM TO YOUR LOCAL SOCIAL SECURITY OFFICE. The office is listed under U. S. Government agencies in your telephone directory or you may call 800 772-1213 for the address.** *You may send comments on our estimate of the time needed to complete the form to:*

SSA, *1338 Annex Building, Baltimore, MD 21235-0001.* **Send** <u>only</u> **comments relating to our time estimate to this address, not the completed form.**

NOV-03-2016  14:54                                                                P.002/002

BRONX LEBANON HOSPITAL CTR
1650 GRAND CONCOURSE
I/P - O/P RECORDS
BRONX, NY  10457

| **WHOSE** Records to be Disclosed | Form Approved<br>OMB No. 0960-0623 |
|---|---|
| NAME (First, Middle, Last, Suffix)<br>Janis Charlene Wilson Bahaga | |
| SSN<br>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 | Birthday (mm/dd/yy)<br>05/19/1981 |

# AUTHORIZATION TO DISCLOSE INFORMATION TO
# THE SOCIAL SECURITY ADMINISTRATION (SSA)

** PLEASE READ THE ENTIRE FORM, BOTH PAGES, BEFORE SIGNING BELOW **

I voluntarily authorize and request disclosure (including paper, oral, and electronic interchange):
**OF WHAT** **All my medical records; also education records and other information related to my ability to perform tasks. This includes specific permission to release:**

1. All records and other information regarding my treatment, hospitalization, and outpatient care for my impairment(s) **including**, and **not limited to** :
   - Psychological, psychiatric or other mental impairment(s) (excludes "psychotherapy notes" as defined in 45 CFR 164.501)
   - Drug abuse, alcoholism, or other substance abuse
   - Sickle cell anemia
   - Records which may indicate the presence of a communicable or noncommunicable disease; and tests for or records of HIV/AIDS
   - Gene-related impairments (including genetic test results)
2. Information about how my impairment(s) affects my ability to complete tasks and activities of daily living, and affects my ability to work.
3. Copies of educational tests or evaluations, including Individualized Educational Programs, triennial assessments, psychological and speech evaluations, and any other records that can help evaluate function; also teachers' observations and evaluations.
4. Information created within 12 months after the date this authorization is signed, as well as past information.

| **FROM WHOM** | THIS BOX TO BE COMPLETED BY SSA/DDS (as needed) Additional information to identify the subject (e.g., other names used), the specific source, or the material to be disclosed: |
|---|---|
| • All medical sources (hospitals, clinics, labs, physicians, psychologists, etc.) including mental health, correctional, addiction treatment, and VA health care facilities<br>• All educational sources (schools, teachers, records administrators, counselors, etc.)<br>• Social workers/rehabilitation counselors<br>• Consulting examiners used by SSA<br>• Employers, insurance companies, workers' compensation programs<br>• Others who may know about my condition (family, neighbors, friends, public officials) | |

**TO WHOM**    The Social Security Administration and to the State agency authorized to process my case (usually called "disability determination services", including contract copy services, and doctors or other professionals consulted during the process. [Also, for international claims, to the U.S. Department of State Foreign Service Post.]

**PURPOSE**    Determining my eligibility for benefits, including looking at the combined effect of any impairments that by themselves would not meet SSA's definition of disability, and whether I can manage such benefits.
☐ Determining whether I am capable of managing benefits ONLY (check only if this applies)

**EXPIRES WHEN**    This authorization is good for 12 months from the date signed (below my signature).
   • I authorize the use of a copy (including electronic copy) of this form for the disclosure of the information described above.
   • I understand that there are some circumstances in which this information may be redisclosed to other parties (see page 2 for details).
   • I may write to SSA and my sources to revoke this authorization at any time (see page 2 for details).
   • SSA will give me a copy of this form if I ask; I may ask the source to allow me to inspect or get a copy of material to be disclosed.
   • I have read both pages of this form and agree to the disclosures above from the types of sources listed.

| PLEASE SIGN USING BLUE OR BLACK INK ONLY<br>INDIVIDUAL authorizing disclosure | IF not signed by subject of disclosure, specify basis for authority to sign<br>☐ Parent of minor   ☐ Guardian   ☐ Other personal representative (explain) |
|---|---|
| SIGN ► *Janis C Wilson-Bahaga* | (Parent/guardian/personal representative<br>sign here if two signatures required by State<br>law)   ► |
| Date Signed<br>10-30-16 | Street Address<br>1205 College Avenue, Apt 6E | | |
| Phone Number (with area code)<br>(718)538-7807 | City<br>Bronx | | State<br>NY | ZIP<br>10456 |

| **WITNESS**    I know the person signing this form or am satisfied of this person's identity: | |
|---|---|
| SIGN ► | IF needed, second witness sign here (e.g., if signed with "X" above)<br>SIGN ► |
| Phone Number (or Address)<br>1347-340-7852 | Phone Number (or Address) |

This general and special authorization to disclose was developed to comply with the provisions regarding disclosure of medical, educational, and other information under P.L. 104-191 ("HIPAA"): 45 CFR parts 160 and 164; 42 U.S. Code section 290dd-2; 42 CFR part 2; 38 U.S. Code section 7332; 38 CFR 1.475; 20 U.S. Code section 1232g ("FERPA"); 34 CFR parts 99 and 300; and State law.

Form SSA-827 (11-2012) ef (11-2012)  Use 4-2009 and Later Editions Until Supply is Exhausted                    Page 1 of 2

## Explanation of Form SSA-827,
## "Authorization to Disclose Information to the Social Security Administration (SSA)"

We need your written authorization to help get the information required to process your application for benefits, and to determine your capability of managing benefits. Laws and regulations require that sources of personal information have a signed authorization before releasing it to us. Also, laws require specific authorization for the release of information about certain conditions and from educational sources.

You can provide this authorization by signing a Form SSA-827. Federal law permits sources with information about you to release that information if you sign a single authorization to release all your information from all your possible sources. We will make copies of it for each source. A few States, and some individual sources of information, require that the authorization specifically name the source that you authorize to release personal information. In those cases, we may ask you to sign one authorization for each source and we may contact you again if we need you to sign more authorizations.

You have the right to revoke this authorization at any time, except to the extent a source of information has already relied on it to take an action. To revoke, send a written statement to any Social Security Office. If you do, also send a copy directly to any of your sources that you no longer wish to disclose information about you; SSA can tell you if we identified any sources you didn't tell us about. Information disclosed prior to revocation may be used by SSA to decide your claim.

It is SSA's policy to provide service to people with limited English proficiency in their native language or preferred mode of communication consistent with Executive Order 13166 (August 11, 2000) and the Individuals with Disabilities Education Act. SSA makes every reasonable effort to ensure that the information in the SSA-827 is provided to you in your native or preferred language.

### IMPORTANT INFORMATION, INCLUDING NOTICE REQUIRED BY THE PRIVACY ACT

All personal information collected by SSA is protected by the Privacy Act of 1974. Once medical information is disclosed to SSA, it is no longer protected by the health information privacy provisions of 45 CFR part 164 (mandated by the Health Insurance Portability and Accountability Act (HIPAA). SSA retains personal information in strict adherence to the retention schedules established and maintained in conjunction with the National Archives and Records Administration. At the end of a record's useful life cycle, it is destroyed in accordance with the privacy provisions, as specified in 36 CFR part 1228.

SSA is authorized to collect the information on form SSA-827 by sections 205(a), 223 (d)(5)(A),1614(a)(3)(H)(i), 1631(d)(1) and 1631 (e)(1)(A) of the Social Security Act. We use the information obtained with this form to determine your eligibility for benefits, and your ability to manage any benefits received. This use usually includes review of the information by the State agency processing your case and quality control people in SSA. In some cases, your information may also be reviewed by SSA personnel that process your appeal of a decision, or by investigators to resolve allegations of fraud or abuse, and may be used in any related administrative, civil, or criminal proceedings.

**Signing this form is voluntary, but failing to sign it, or revoking it before we receive necessary information, could prevent an accurate or timely decision on your claim, and could result in denial or loss of benefits.** Although the information we obtain with this form is almost never used for any purpose other than those stated above, the information may be disclosed by SSA without your consent if authorized by Federal laws such as the Privacy Act and the Social Security Act. For example, SSA may disclose:

1. To enable a third party (e.g., consulting physicians) or other government agency to assist SSA to establish rights to Social Security benefits and/or coverage;
2. Pursuant to law authorizing the release of information from Social Security records (e.g., to the Inspector General, to Federal or State benefit agencies or auditors, or to the Department of Veterans Affairs(VA));
3. For statistical research and audit activities necessary to assure the integrity and improvement of the Social Security programs (e.g., to the Bureau of the Census and private concerns under contract with SSA).

Other than the above limited circumstances, SSA will not redisclose without proper prior written consent information (1) relating to alcohol and/or drug abuse as covered in 42 CFR part 2, or (2) from educational records for a minor obtained under 34 CFR part 99 (Family Educational Rights and Privacy Act (FERPA)), or (3) regarding mental health, developmental disability, AIDS or HIV.

We may also use the information you give us when we match records by computer. Matching programs compare our records with those of other Federal, state, or local government agencies. Many agencies may use matching programs to find or prove that a person qualifies for benefits paid by the Federal government. The law allows us to do this even if you do not agree to it.

Explanations about possible reasons why information you provide us may be used or given out are available upon request from any Social Security Office.

### PAPERWORK REDUCTION ACT STATEMENT

This information collection meets the clearance requirements of 44 U.S.C. section 3507, as amended by section 2 of the Paperwork Reduction Act of 1995. You do not need to answer these questions unless we display a valid Office of Management and Budget control number. We estimate that it will take about 10 minutes to read the instructions, gather the facts, and answer the questions. **SEND OR DELIVER THE COMPLETED FORM TO YOUR LOCAL SOCIAL SECURITY OFFICE. The office is listed under U. S. Government agencies in your telephone directory or you may call 800 772-1213 for the address.** *You may send comments on our estimate of the time needed to complete the form to:*

SSA, *1338 Annex Building, Baltimore, MD 21235-0001. **Send only comments relating to our time estimate to this address, not the completed form.***

**New York State Office of Temporary and Disability Assistance**
**Division of Disability Determinations**

Request #: H00459722
Date: 06/02/16

Request for Medical Field Contact
To: Medical Relations Officer – Region: 3

From: B. Slater
7 / A 001 / 9251          Tel: (607)741-4041

Claimant Name: JANIS C. WILSON BAHAGA
SSN: 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

DOB: 05/19/81

Address: 1205 COLLEGE AVE
APT 6E
BRONX, NY 10456

| Facility: | BRONX LEBANON HOSPITAL CTR | ID Number at Facility: |
| --- | --- | --- |
| | 1650 GRAND CONCOURSE | 0293-7494 |
| | I/P - O/P RECORDS | |
| | BRONX, NY  10457 | |

| INPATIENT DATES | OUTPATIENT | |
| --- | --- | --- |
| 04/28/16 - 05/31/16 | Clinic(s) Attended: | |
| 00/00/00 - 00/00/00 | | |
| | Date First Seen: 01/01/11 | Most Recent: Present |

**ALLEGATIONS:**                                              **ALLEGED ONSET DATE:** 00/00/00
lupus, arthritis, htn, psychiatric issues

**AKA & PREVIOUS ADDRESS**

**MEDICAL INFORMATION REQUESTED**
**NOTE TO FACILITY/VENDOR:** FIELD REP IS ONLY AUTHORIZED TO REMOVE ENCRYPTED,
ELECTRONICALLY CAPTURED RECORDS FROM SITE IN ACCORDANCE WITH THIS REQUEST FORM.
PAPER RECORDS SHOULD ONLY BE IMAGED BY THE FIELD REP ON SITE, AND SHOULD NOT BE
TAKEN OFF SITE!

| | | | | | |
| --- | --- | --- | --- | --- | --- |
| PULM-FUNC: | | DISCH SUMM: | X | PSYCHIATRIC: | X |
| ADM-HIST: | X | EYE EXAM: | | AUDIO TESTING: | |
| ER RECORDS: | X | EKG: | | OPER-NOTES: | |
| EEG REPORT: | | PSYCH. TESTING: | X | URINALYSIS: | X |
| X-RAY REPORTS: | All | BLOOD CHEM: | X | PATH REPORTS: | X |
| IEP: | | CLINIC NOTES: | X | SPEECH & LANG: | |
| PHYSICAL: | | EDUCATIONAL: | | | |

Clmt was in ER on 4/28/2016 and had follow up in May.

AUTHORIZATION ON FILE

FIELD ANALYST RESPONSE/REMARKS

Status _____     Date: _____   Scanned by _____     Pages _____

BRONX LEBANON HOSPITAL CTR
1650 GRAND CONCOURSE
I/P – O/P RECORDS
BRONX, NY  10457

**WHOSE** *Records to be Disclosed*                        Form Approved
                                                           CME No. 0960-0623

| NAME *(First, Middle, Last, Suffix)* | | |
| --- | --- | --- |
| Janis Charlene Wilson Bahaga | | |
| SSN 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 | Birthday *(mm/dd/yy)* | 05/19/81 |

# AUTHORIZATION TO DISCLOSE INFORMATION TO
# THE SOCIAL SECURITY ADMINISTRATION (SSA)

**\*\* PLEASE READ THE ENTIRE FORM, BOTH PAGES, BEFORE SIGNING BELOW \*\***

**I voluntarily authorize and request disclosure** (including paper, oral, and electronic interchange):

**OF WHAT**   _All my medical records; also education records and other information related to my ability to perform tasks. This includes specific permission to release:_

1. **All records and other information regarding my treatment, hospitalization, and outpatient care for my impairment(s)** _including_, **and** _not limited to_ :
   - Psychological, psychiatric or other mental impairment(s) (excludes "psychotherapy notes" as defined in 45 CFR 164.501)
   - Drug abuse, alcoholism, or other substance abuse
   - Sickle cell anemia
   - Records which may indicate the presence of a communicable or noncommunicable disease; and tests for or records of HIV/AIDS
   - Gene-related impairments (including genetic test results)
2. **Information about how my impairment(s) affects my ability to complete tasks and activities of daily living, and affects my ability to work.**
3. **Copies of educational tests or evaluations, including Individualized Educational Programs, triennial assessments, psychological and speech evaluations, and any other records that can help evaluate function; also teachers' observations and evaluations.**
4. **Information created within 12 months after the date this authorization is signed, as well as past information.**

| **FROM WHOM** | **THIS BOX TO BE COMPLETED BY SSA/DDS (as needed)** Additional information to identify the subject (e.g., other names used), the specific source, or the material to be disclosed |
| --- | --- |
| • **All medical sources** (hospitals, clinics, labs, physicians, psychologists, etc.) including mental health, correctional, addiction treatment, and VA health care facilities<br>• All educational sources (schools, teachers, records administrators, counselors, etc.)<br>• Social workers/rehabilitation counselors<br>• Consulting examiners used by SSA<br>• Employers, insurance companies, workers' compensation programs<br>• Others who may know about my condition (family, neighbors, friends, public officials) | |

**TO WHOM**   The Social Security Administration and to the State agency authorized to process my case (usually called "disability determination services"), including contract copy services, and doctors or other professionals consulted during the process. [Also, for international claims, to the U.S. Department of State Foreign Service Post.]

**PURPOSE**   Determining my **eligibility for benefits**, including looking at the combined effect of any impairments that by themselves would not meet SSA's definition of disability; and whether I can manage such benefits.
☐ Determining whether I am **capable of managing benefits ONLY** (check only if this applies)

**EXPIRES WHEN**   This authorization is good for 12 months from the date signed (below my signature).

- I authorize the use of a copy (including electronic copy) of this form for the disclosure of the information described above.
- I understand that there are some circumstances in which this information may be redisclosed to other parties (see page 2 for details).
- I may write to SSA and my sources to revoke this authorization at any time (see page 2 for details).
- SSA will give me a copy of this form if I ask; I may ask the source to allow me to inspect or get a copy of material to be disclosed.
- **I have read both pages of this form and agree to the disclosures above from the types of sources listed.**

| **PLEASE SIGN USING BLUE OR BLACK INK ONLY** | **IF not signed by subject of disclosure, specify basis for authority to sign** |
| --- | --- |
| **INDIVIDUAL** authorizing disclosure | ☐ Parent of minor   ☐ Guardian   ☐ Other personal representative (explain) |
| **SIGN** ▶ *Electronically Signed By:* Janis Charlene Wilson Bahaga | (Parent/guardian/personal representative sign here if two signatures required by State law) ▶ |

| Date Signed 05/16/16 | Street Address 1205 COLLEGE AVE APT 6E | | |
| --- | --- | --- | --- |
| Phone Number (with area code) 718-538-7807 | City BRONX | State NY | ZIP 10456 |

**WITNESS** *I know the person signing this form or am satisfied of this person's identity:*

| *Attested by SSA or Designated State Agency Employee:* | IF needed, second witness sign here (e.g., if signed with "X" above) |
| --- | --- |
| **SIGN** ▶ C White | **SIGN** ▶ |
| Phone Number (or Address) 855-531-1684 BRONX NY 10451-3528 | Phone Number (or Address) |

*This general and special authorization to disclose was developed to comply with the provisions regarding disclosure of medical, educational, and other information under P.L. 104-191 ("HIPAA"); 45 CFR parts 160 and 164; 42 U.S. Code section 290dd-2; 42 CFR part 2; 38 U.S. Code section 7332; 38 CFR 1.475; 20 U.S. Code section 1232g ("FERPA"); 34 CFR parts 99 and 300; and State law.*

Form SSA-827 (11-2012)  ef (11-2012)  Use 4-2009 and Later Editions Until Supply is Exhausted                Page 1 of 2

Case 1:19-cv-05014-KPF-RWL   Document 33-1   Filed 06/02/20   Page 36 of 41

**Explanation of Form SSA-827,**
## "Authorization to Disclose Information to the Social Security Administration (SSA)"

We need your written authorization to help get the information required to process your application for benefits, and to determine your capability of managing benefits. Laws and regulations require that sources of personal information have a signed authorization before releasing it to us. Also, laws require specific authorization for the release of information about certain conditions and from educational sources.

You can provide this authorization by signing a Form SSA-827. Federal law permits sources with information about you to release that information if you sign a single authorization to release all your information from all your possible sources. We will make copies of it for each source. A few States, and some individual sources of information, require that the authorization specifically name the source that you authorize to release personal information. In those cases, we may ask you to sign one authorization for each source and we may contact you again if we need you to sign more authorizations.

You have the right to revoke this authorization at any time, except to the extent a source of information has already relied on it to take an action. To revoke, send a written statement to any Social Security Office. If you do, also send a copy directly to any of your sources that you no longer wish to disclose information about you; SSA can tell you if we identified any sources you didn't tell us about. Information disclosed prior to revocation may be used by SSA to decide your claim.

It is SSA's policy to provide service to people with limited English proficiency in their native language or preferred mode of communication consistent with Executive Order 13166 (August 11, 2000) and the Individuals with Disabilities Education Act. SSA makes every reasonable effort to ensure that the information in the SSA-827 is provided to you in your native or preferred language.

### IMPORTANT INFORMATION, INCLUDING NOTICE REQUIRED BY THE PRIVACY ACT

All personal information collected by SSA is protected by the Privacy Act of 1974. Once medical information is disclosed to SSA, it is no longer protected by the health information privacy provisions of 45 CFR part 164 (mandated by the Health Insurance Portability and Accountability Act (HIPAA). SSA retains personal information in strict adherence to the retention schedules established and maintained in conjunction with the National Archives and Records Administration. At the end of a record's useful life cycle, it is destroyed in accordance with the privacy provisions, as specified in 36 CFR part 1228.

SSA is authorized to collect the information on form SSA-827 by sections 205(a), 223 (d)(5)(A),1614(a)(3)(H)(i), 1631(d)(1) and 1631 (e)(1)(A) of the Social Security Act. We use the information obtained with this form to determine your eligibility for benefits, and your ability to manage any benefits received. This use usually includes review of the information by the State agency processing your case and quality control people in SSA. In some cases, your information may also be reviewed by SSA personnel that process your appeal of a decision, or by investigators to resolve allegations of fraud or abuse, and may be used in any related administrative, civil, or criminal proceedings.

**Signing this form is voluntary, but failing to sign it, or revoking it before we receive necessary information, could prevent an accurate or timely decision on your claim, and could result in denial or loss of benefits.** Although the information we obtain with this form is almost never used for any purpose other than those stated above, the information may be disclosed by SSA without your consent if authorized by Federal laws such as the Privacy Act and the Social Security Act. For example, SSA may disclose:

1. To enable a third party (e.g., consulting physicians) or other government agency to assist SSA to establish rights to Social Security benefits and/or coverage;
2. Pursuant to law authorizing the release of information from Social Security records (e.g., to the Inspector General, to Federal or State benefit agencies or auditors, or to the Department of Veterans Affairs(VA));
3. For statistical research and audit activities necessary to assure the integrity and improvement of the Social Security programs (e.g., to the Bureau of the Census and private concerns under contract with SSA).

Other than the above limited circumstances, SSA will not redisclose without proper prior written consent information (1) relating to alcohol and/or drug abuse as covered in 42 CFR part 2, or (2) from educational records for a minor obtained under 34 CFR part 99 (Family Educational Rights and Privacy Act (FERPA)), or (3) regarding mental health, developmental disability, AIDS or HIV.

We may also use the information you give us when we match records by computer. Matching programs compare our records with those of other Federal, state, or local government agencies. Many agencies may use matching programs to find or prove that a person qualifies for benefits paid by the Federal government. The law allows us to do this even if you do not agree to it.

Explanations about possible reasons why information you provide us may be used or given out are available upon request from any Social Security Office.

### PAPERWORK REDUCTION ACT STATEMENT

This information collection meets the clearance requirements of 44 U.S.C. section 3507, as amended by section 2 of the Paperwork Reduction Act of 1995. You do not need to answer these questions unless we display a valid Office of Management and Budget control number. We estimate that it will take about 10 minutes to read the instructions, gather the facts, and answer the questions. **SEND OR DELIVER THE COMPLETED FORM TO YOUR LOCAL SOCIAL SECURITY OFFICE. The office is listed under U. S. Government agencies in your telephone directory or you may call 800 772-1213 for the address.** *You may send comments on our estimate of the time needed to complete the form to:*

SSA, *1338 Annex Building, Baltimore, MD  21235-0001.* **Send** *only* **comments relating to our time estimate to this address, not the completed form.**

**New York State Office of Temporary and Disability Assistance**
**Division of Disability Determinations**
**P.O. BOX 8783**
**LONDON, KY 40742**
**Phone: (607)741-4168 Toll Free: 1-800-522-5511 Ext. 4168 Fax: 1-866-323-8335**

`www.OTDA.State.NY.US/DDD`

February 16, 2016

<u>In Reference to Claimant</u>

PROMESA                                        SSN:  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 DOB: 5/19/1981
1776 CLAY AVE                                Name:  JANIS C. WILSON BAHAGA
MEDICAL RECORDS                                      1205 COLLEGE AVE #6E
HEALTH SERV ADMIN                                    BRONX, NY 10456
BRONX, NY  10457
                                    MER ORDER#:  **H0044207B**

**Please use MER ORDER# for Dictation and Remittance Tracking.**

This agency is responsible for adjudication of disability claims on behalf of the federal
government under the Social Security Act. Your patient has made an application for benefits and
we need medical evidence from treating sources to evaluate the claim. Attached is a signed
consent for the release of the information.  If you receive this request via system-generated
FAX, we have retained the consent form in our file.

We would appreciate information from your records that is requested on the second page. This
would enable us to evaluate the impairment in terms of the standards of this program.  Your
cooperation is appreciated.

                              Sincerely yours,
                              J. Bartlett
                              Disability Analyst - Unit C002

## **PLEASE FOLLOW INSTRUCTIONS TO RECEIVE PAYMENT****

**VOUCHER INSTRUCTIONS: Billed Amount: $10.00**
We are authorized to pay for medical information which is useful and relevant. If you wish payment, please COMPLETE ALL BOXES BELOW or
REVIEW PREPRINTED INFORMATION. Preprinted information needing correction must be authorized via signed correspondence on the
facility letterhead and returned with this letter.
**Payee ID:** Enter the **9-Digit Federal ID** assigned to you as an employer. If you are operating as an individual in business, enter your Social
Security Number. **The ID number MUST belong to the payee.**

Claimant's Name: JANIS C. WILSON BAHAGA

Date of Birth: 5/19/1981

Medical Record Number/Patient ID: Unknown

AKA:

Previous Address:

---

INFORMATION REQUESTED

| | | |
|---|---|---|
| MRI and CT Scans | Urinalysis | Psychiatric Records |
| Clinic Notes | Blood Chemistry | EKG |
| Discharge Summary | ER Records | Admission History |
| Pulmonary Funct Studies | | |

X-Ray Report(s) of  All

ALL TREATMENT RECORDS: LUPUS, HBP, ARTHRITIS, PRIMARY CARE, ADHD

Dates of treatment        OUTPATIENT        FIRST INPATIENT        MOST RECENT INPATIENT

02/10/2015 - Present

MAY-09-2015  14:47                                                           P.002

Form Approved
OMB No. 0960-0623

C PROMESA
1776 CLAY AVE
MEDICAL RECORDS
HEALTH SERV ADMIN
BRONX, NY  10457

**WHOSE** *Records to be Disclosed*

NAME *(First, Middle, Last, Suffix)*
Janis Charlene                              Wilson Bahaga

| SSN | | Birthday (mm/dd/yy) |
|---|---|---|
| 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 | | 5/19/1981 |

# AUTHORIZATION TO DISCLOSE INFORMATION TO
# THE SOCIAL SECURITY ADMINISTRATION (SSA)

**\*\* PLEASE READ THE ENTIRE FORM, BOTH PAGES, BEFORE SIGNING BELOW \*\***

**I voluntarily authorize and request disclosure (including paper, oral, and electronic interchange):**

**OF WHAT**   *All my medical records; also education records and other information related to my ability to perform tasks. This includes specific permission to release:*

1. All records and other information regarding my treatment, hospitalization, and outpatient care for my impairment(s) *including,* and *not* limited to:
   - Psychological, psychiatric or other mental impairment(s) (excludes "psychotherapy notes" as defined in 45 CFR 164.501)
   - Drug abuse, alcoholism, or other substance abuse
   - Sickle cell anemia
   - Records which may indicate the presence of a communicable or noncommunicable disease; and tests for or records of HIV/AIDS
   - Gene-related impairments (including genetic test results)
2. Information about how my impairment(s) affects my ability to complete tasks and activities of daily living, and affects my ability to work.
3. Copies of educational tests or evaluations, including Individualized Educational Programs, triennial assessments, psychological and speech evaluations, and any other records that can help evaluate function; also teachers' observations and evaluations.
4. Information created within 12 months after the date this authorization is signed, as well as past information.

**FROM WHOM**

- All medical sources (hospitals, clinics, labs, physicians, psychologists, etc.) including mental health, correctional, addiction treatment, and VA health care facilities
- All educational sources (schools, teachers, records administrators, counselors, etc.)
- Social workers/rehabilitation counselors
- Consulting examiners used by SSA
- Employers, insurance companies, workers' compensation programs
- Others who may know about my condition (family, neighbors, friends, public officials)

THIS BOX TO BE COMPLETED BY SSA/DDS (as needed) Additional information to identify the subject (e.g., other names used), the specific source, or the material to be disclosed:

SOUTH BRONX
D.O. 112

APR 27 2015

21112
SSA DISTRICT OFFICE

**TO WHOM**   The Social Security Administration and to the State agency authorized to process my case (usually called 'disability determination services'), including contract copy services, and doctors or other professionals consulted during the process. [Also, for international claims, to the U.S. Department of State Foreign Service Post.]

**PURPOSE**   Determining my eligibility for benefits, including looking at the combined effect of any impairments that by themselves would not meet SSA's definition of disability; and whether I can manage such benefits.

☐ Determining whether I am capable of managing benefits ONLY (check only if this applies)

**EXPIRES WHEN**   This authorization is good for 12 months from the date signed (below my signature).

- I authorize the use of a copy (including electronic copy) of this form for the disclosure of the information described above.
- I understand that there are some circumstances in which this information may be redisclosed to other parties (see page 2 for details).
- I may write to SSA and my sources to revoke this authorization at any time (see page 2 for details).
- SSA will give me a copy of this form if I ask; I may ask the source to allow me to inspect or get a copy of material to be disclosed.
- I have read both pages of this form and agree to the disclosures above from the types of sources listed.

**PLEASE SIGN USING BLUE OR BLACK INK ONLY!** If not signed by subject of disclosure, specify basis for authority to sign

INDIVIDUAL authorizing disclosure   ☐ Parent of minor   ☐ Guardian   ☐ Other personal representative (explain)

SIGN ▶ *Janis C Wilson-B*   (Parent/guardian/personal representative sign here if two signatures required by State law) ▶

| Date Signed | Street Address |
|---|---|
| 4-14-15 | 1205 COLLEGE AVE, APT 6E |

| Phone Number (with area code) | City | State | ZIP |
|---|---|---|---|
| 718-538-7807 | BRONX | NY | 10456-4147 |

**WITNESS**   I know the person signing this form or am satisfied of this person's identity:

SIGN ▶

| Phone Number (or Address) | IF needed, second witness sign here (e.g., if signed with "X" above) SIGN ▶ |
|---|---|
| | Phone Number (or Address) |

*This general and special authorization to disclose was developed to comply with the provisions regarding disclosure of medical, educational, and other information under P.L. 104-191 ("HIPAA"); 45 CFR parts 160 and 164; 42 U.S. Code section 290dd-2; 42 CFR part 2; 38 U.S. Code section 7332; 38 CFR 1.475; 20 U.S. Code section 1232g ("FERPA"); 34 CFR parts 99 and 300; and State law.*

Form SSA-827 (11-2012)   ef (11-2012) Use 4-2009 and Later Editions Until Supply is Exhausted

**Explanation of Form SSA-827,**
## "Authorization to Disclose Information to the Social Security Administration (SSA)"

We need your written authorization to help get the information required to process your application for benefits, and to determine your capability of managing benefits.  Laws and regulations require that sources of personal information have a signed authorization before releasing it to us.  Also, laws require specific authorization for the release of information about certain conditions and from educational sources.

You can provide this authorization by signing a Form SSA-827.  Federal law permits sources with information about you to release that information if you sign a single authorization to release all your information from all your possible sources.  We will make copies of it for each source.  A few States, and some individual sources of information, require that the authorization specifically name the source that you authorize to release personal information.  In those cases, we may ask you to sign one authorization for each source and we may contact you again if we need you to sign more authorizations.

You have the right to revoke this authorization at any time, except to the extent a source of information has already relied on it to take an action.  To revoke, send a written statement to any Social Security Office.  If you do, also send a copy directly to any of your sources that you no longer wish to disclose information about you; SSA can tell you if we identified any sources you didn't tell us about.  Information disclosed prior to revocation may be used by SSA to decide your claim.

It is SSA's policy to provide service to people with limited English proficiency in their native language or preferred mode of communication consistent with Executive Order 13166 (August 11, 2000) and the Individuals with Disabilities Education Act.  SSA makes every reasonable effort to ensure that the information in the SSA-827 is provided to you in your native or preferred language.

## IMPORTANT INFORMATION, INCLUDING NOTICE REQUIRED BY THE PRIVACY ACT

All personal information collected by SSA is protected by the Privacy Act of 1974.  Once medical information is disclosed to SSA, it is no longer protected by the health information privacy provisions of 45 CFR part 164 (mandated by the Health Insurance Portability and Accountability Act (HIPAA).  SSA retains personal information in strict adherence to the retention schedules established and maintained in conjunction with the National Archives and Records Administration.  At the end of a record's useful life cycle, it is destroyed in accordance with the privacy provisions, as specified in 36 CFR part 1228.

SSA is authorized to collect the information on form SSA-827 by sections 205(a), 223 (d)(5)(A),1614(a)(3)(H)(i), 1631(d)(1) and 1631 (e)(1)(A) of the Social Security Act.  We use the information obtained with this form to determine your eligibility for benefits, and your ability to manage any benefits received.  This use usually includes review of the information by the State agency processing your case and quality control people in SSA.  In some cases, your information may also be reviewed by SSA personnel that process your appeal of a decision, or by investigators to resolve allegations of fraud or abuse, and may be used in any related administrative, civil, or criminal proceedings.

**Signing this form is voluntary, but failing to sign it, or revoking it before we receive necessary information, could prevent an accurate or timely decision on your claim, and could result in denial or loss of benefits.**  Although the information we obtain with this form is almost never used for any purpose other than those stated above, the information may be disclosed by SSA without your consent if authorized by Federal laws such as the Privacy Act and the Social Security Act.  For example, SSA may disclose:

1. To enable a third party (e.g., consulting physicians) or other government agency to assist SSA to establish rights to Social Security benefits and/or coverage;
2. Pursuant to law authorizing the release of information from Social Security records (e.g., to the Inspector General, to Federal or State benefit agencies or auditors, or to the Department of Veterans Affairs(VA));
3. For statistical research and audit activities necessary to assure the integrity and improvement of the Social Security programs (e.g., to the Bureau of the Census and private concerns under contract with SSA).

Other than the above limited circumstances, SSA will not redisclose without proper prior written consent information (1) relating to alcohol and drug abuse as covered in 42 CFR part 2, or (2) from educational records for a minor obtained under 34 CFR part 99 (Family Educational Rights and Privacy Act (FERPA)), or (3) regarding mental health, developmental disability, AIDS or HIV.

We may also use the information you give us when we match records by computer.  Matching programs compare our records with those of other Federal, state, or local government agencies.  Many agencies may use matching programs to find or prove that a person qualifies for benefits paid by the Federal government.  The law allows us to do this even if you do not agree to it.

Explanations about possible reasons why information you provide us may be used or given out are available upon request from any Social Security Office.

## PAPERWORK REDUCTION ACT STATEMENT

This information collection meets the clearance requirements of 44 U.S.C. section 3507, as amended by section 2 of the Paperwork Reduction Act of 1995.  You do not need to answer these questions unless we display a valid Office of Management and Budget control number.  We estimate that it will take about 10 minutes to read the instructions, gather the facts, and answer the questions. **SEND OR DELIVER THE COMPLETED FORM TO YOUR LOCAL SOCIAL SECURITY OFFICE.  The office is listed under U. S. Government agencies in your telephone directory or you may call 800 772-1213 for the address.**  *You may send comments on our estimate of the time needed to complete the form to:*

SSA, 1338 Annex Building, Baltimore, MD  21235-0001. **Send *only* comments relating to our time estimate to this address, not the completed form.**

**New York State Office of Temporary and Disability Assistance**
**Division of Disability Determinations**
**P.O. BOX 8783**
**LONDON, KY 40742**
**Phone: (607)741-4168 Toll Free: 1-800-522-5511 Ext. 4168 Fax: 1-866-323-8335**

`www.OTDA.State.NY.US/DDD`

February 16, 2016

<u>In Reference to Claimant</u>

```
ARTHUR AVE HEALTH CLINIC          SSN: 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 DOB: 5/19/1981
MEDICAL RECORDS                   Name: JANIS C. WILSON BAHAGA
177 FULTON AVE                           1205 COLLEGE AVE #6E
BRONX, NY  10460                         BRONX, NY 10456

                   MER ORDER#:  H00442078
```

**Please use MER ORDER# for Dictation and Remittance Tracking.**

```
This agency is responsible for adjudication of disability claims on behalf of the federal
government under the Social Security Act. Your patient has made an application for benefits and
we need medical evidence from treating sources to evaluate the claim. Attached is a signed
consent for the release of the information.  If you receive this request via system-generated
FAX, we have retained the consent form in our file.

We would appreciate information from your records that is requested on the second page. This
would enable us to evaluate the impairment in terms of the standards of this program.  Your
cooperation is appreciated.

                            Sincerely yours,
                            J. Bartlett
                            Disability Analyst - Unit C002
```

## **\*\*PLEASE FOLLOW INSTRUCTIONS TO RECEIVE PAYMENT\*\***

**VOUCHER INSTRUCTIONS: Billed Amount: $10.00**
We are authorized to pay for medical information which is useful and relevant. If you wish payment, please COMPLETE ALL BOXES BELOW or
REVIEW PREPRINTED INFORMATION. Preprinted information needing correction must be authorized via signed correspondence on the
facility letterhead and returned with this letter.
**Payee ID:** Enter the 9-Digit Federal ID assigned to you as an employer. If you are operating as an individual in business, enter your Social
Security Number. **The ID number MUST belong to the payee.**
**Payee Name:** Enter your name and address AS YOU WISH IT TO APPEAR ON THE CHECK.

| | |
|---|---|
| Payee ID: | **Payee Certification:**<br>I certify that the above is just, true and correct and that no<br>part thereof has been paid except as stated and that the<br>balance is actually due and owing, and that taxes from<br>which the State is exempt are excluded. |
| Payee Name: | |
| Address: | |
| Address: | **Payee's Signature in ink:** |
| City, State, ZIP: | Title:          Date: |

Off. Use Only: RO Signature/Date:                    CO - Signature/Date/Interest:

## PLEASE RETURN THIS LETTER WITH YOUR REPLY IN THE ENCLOSED ENVELOPE
## OR FAX TO THE NUMBER ABOVE

Case 1:19-cv-05014-KPF-RWL   Document 34   Filed 06/02/20   Page 32 of 34

Claimant's Name: JANIS C. WILSON BARAGA

Date of Birth: 5/19/1981

Medical Record Number/Patient ID: Unknown

            AKA:

Previous Address:

---

INFORMATION REQUESTED

| | | |
|---|---|---|
| MRI and CT Scans | Urinalysis | Psychiatric Records |
| Clinic Notes | Blood Chemistry | EKG |
| Discharge Summary | ER Records | Admission History |
| Pulmonary Funct Studies | | |

X-Ray Report(s) of  All

ALL TREATMENT RECORDS: ALLERGIES, LUPUS, ARTHRITIS, HBP

Dates of treatment      OUTPATIENT        FIRST INPATIENT      MOST RECENT INPATIENT

            01/01/2015 - Present

MAY-09-2015  14:47                                                                 P.002

⌐ ARTHUR AVE HEALTH CLINIC
  MEDICAL RECORDS
  177 FULTON AVE
  BRONX, NY  10460

Form Approved
OMB No. 0960-0623

**WHOSE Records to be Disclosed**

NAME *(First, Middle, Last, Suffix)*
Janis Charlene                              Wilson Bahaga

| SSN | Birthday (mm/dd/yy) |
|-----|---------------------|
| 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 | 5/19/1981 |

# AUTHORIZATION TO DISCLOSE INFORMATION TO
# THE SOCIAL SECURITY ADMINISTRATION (SSA)

**\*\* PLEASE READ THE ENTIRE FORM, BOTH PAGES, BEFORE SIGNING BELOW \*\***

**I voluntarily authorize and request disclosure** (including paper, oral, and electronic interchange):

**OF WHAT**   *All my medical records; also education records and other information related to my ability to perform tasks. This includes specific permission to release:*

1. All records and other information regarding my treatment, hospitalization, and outpatient care for my impairment(s) *including,* and *not limited to:*
   - Psychological, psychiatric or other mental impairment(s) (excludes "psychotherapy notes" as defined in 45 CFR 164.501)
   - Drug abuse, alcoholism, or other substance abuse
   - Sickle cell anemia
   - Records which may indicate the presence of a communicable or noncommunicable disease; and tests for or records of HIV/AIDS
   - Gene-related impairments (including genetic test results)
2. Information about how my impairment(s) affects my ability to complete tasks and activities of daily living, and affects my ability to work.
3. Copies of educational tests or evaluations, including Individualized Educational Programs, triennial assessments, psychological and speech evaluations, and any other records that can help evaluate function; also teachers' observations and evaluations.
4. Information created within 12 months after the date this authorization is signed, as well as past information.

**FROM WHOM**

- All medical sources (hospitals, clinics, labs, physicians, psychologists, etc.) including mental health, correctional, addiction treatment, and VA health care facilities
- All educational sources (schools, teachers, records administrators, counselors, etc.)
- Social workers/rehabilitation counselors
- Consulting examiners used by SSA
- Employers, insurance companies, workers' compensation programs
- Others who may know about my condition (family, neighbors, friends, public officials)

THIS BOX TO BE COMPLETED BY SSA/DDS (as needed) Additional information to identify the subject (e.g., other names used), the specific source, or the material to be disclosed:

SOUTH BRONX
D.O. 112

APR 27 2015

21152
SSA DISTRICT OFFICE

**TO WHOM**   The Social Security Administration and to the State agency authorized to process my case (usually called 'disability determination services'), including contract copy services, and doctors or other professionals consulted during the process. [Also, for international claims, to the U.S. Department of State Foreign Service Post.]

**PURPOSE**   ☐ Determining my eligibility for benefits, including looking at the combined effect of any impairments that by themselves would not meet SSA's definition of disability; and whether I can manage such benefits.

☐ Determining whether I am capable of managing benefits ONLY (check only if this applies)

**EXPIRES WHEN**   This authorization is good for 12 months from the date signed (below my signature).

- I authorize the use of a copy (including electronic copy) of this form for the disclosure of the information described above.
- I understand that there are some circumstances in which this information may be redisclosed to other parties (see page 2 for details).
- I may write to SSA and my sources to revoke this authorization at any time (see page 2 for details).
- SSA will give me a copy of this form if I ask; I may ask the source to allow me to inspect or get a copy of material to be disclosed.
- I have read both pages of this form and agree to the disclosures above from the types of sources listed.

**PLEASE SIGN USING BLUE OR BLACK INK ONLY.**   IF not signed by subject of disclosure, specify basis for authority to sign

INDIVIDUAL authorizing disclosure   ☐ Parent of minor   ☐ Guardian   ☐ Other personal representative (explain)

**SIGN** ▶  *Janis C. Wilson-B*   (Parent/guardian/personal representative sign here if two signatures required by State law) ▶

| Date Signed 4-14-15 | Street Address 1205 COLLEGE AVE, APT 6E | | |
|---|---|---|---|

| Phone Number (with area code) 718-538-7807 | City BRONX | State NY | ZIP 10456-4147 |

**WITNESS**   *I know the person signing this form or am satisfied of this person's identity:*

| | IF needed, second witness sign here (e.g., if signed with "X" above) |
|---|---|
| SIGN ▶ | SIGN ▶ |
| Phone Number (or Address) | Phone Number (or Address) |

*This general and special authorization to disclose was developed to comply with the provisions regarding disclosure of medical, educational, and other information under P.L. 104-191 ("HIPAA"); 45 CFR parts 160 and 164; 42 U.S. Code section 290dd-2; 42 CFR part 2; 38 U.S. Code section 7332; 38 CFR 1.475; 20 U.S. Code section 1232g ("FERPA"); 34 CFR parts 99 and 300; and State law.*

Form SSA-827 (11-2012)   ef (11-2012) Use 4-2009 and Later Editions Until Supply is Exhausted                    Page 1 of 2

TOTAL P.002

**Explanation of Form SSA-827,**
## "Authorization to Disclose Information to the Social Security Administration (SSA)"

We need your written authorization to help get the information required to process your application for benefits, and to determine your capability of managing benefits. Laws and regulations require that sources of personal information have a signed authorization before releasing it to us. Also, laws require specific authorization for the release of information about certain conditions and from educational sources.

You can provide this authorization by signing a Form SSA-827. Federal law permits sources with information about you to release that information if you sign a single authorization to release all your information from all your possible sources. We will make copies of it for each source. A few States, and some individual sources of information, require that the authorization specifically name the source that you authorize to release personal information. In those cases, we may ask you to sign one authorization for each source and we may contact you again if we need you to sign more authorizations.

You have the right to revoke this authorization at any time, except to the extent a source of information has already relied on it to take an action. To revoke, send a written statement to any Social Security Office. If you do, also send a copy directly to any of your sources that you no longer wish to disclose information about you; SSA can tell you if we identified any sources you didn't tell us about. Information disclosed prior to revocation may be used by SSA to decide your claim.

It is SSA's policy to provide service to people with limited English proficiency in their native language or preferred mode of communication consistent with Executive Order 13166 (August 11, 2000) and the Individuals with Disabilities Education Act. SSA makes every reasonable effort to ensure that the information in the SSA-827 is provided to you in your native or preferred language.

## IMPORTANT INFORMATION, INCLUDING NOTICE REQUIRED BY THE PRIVACY ACT

All personal information collected by SSA is protected by the Privacy Act of 1974. Once medical information is disclosed to SSA, it is no longer protected by the health information privacy provisions of 45 CFR part 164 (mandated by the Health Insurance Portability and Accountability Act (HIPAA). SSA retains personal information in strict adherence to the retention schedules established and maintained in conjunction with the National Archives and Records Administration. At the end of a record's useful life cycle, it is destroyed in accordance with the privacy provisions, as specified in 36 CFR part 1228.

SSA is authorized to collect the information on form SSA-827 by sections 205(a), 223 (d)(5)(A),1614(a)(3)(H)(i), 1631(d)(1) and 1631 (e)(1)(A) of the Social Security Act. We use the information obtained with this form to determine your eligibility for benefits, and your ability to manage any benefits received. This use usually includes review of the information by the State agency processing your case and quality control people in SSA. In some cases, your information may also be reviewed by SSA personnel that process your appeal of a decision, or by investigators to resolve allegations of fraud or abuse, and may be used in any related administrative, civil, or criminal proceedings.

**Signing this form is voluntary, but failing to sign it, or revoking it before we receive necessary information, could prevent an accurate or timely decision on your claim, and could result in denial or loss of benefits.** Although the information we obtain with this form is almost never used for any purpose other than those stated above, the information may be disclosed by SSA without your consent if authorized by Federal laws such as the Privacy Act and the Social Security Act. For example, SSA may disclose:

1. To enable a third party (e.g., consulting physicians) or other government agency to assist SSA to establish rights to Social Security benefits and/or coverage;
2. Pursuant to law authorizing the release of information from Social Security records (e.g., to the Inspector General, to Federal or State benefit agencies or auditors, or to the Department of Veterans Affairs(VA));
3. For statistical research and audit activities necessary to assure the integrity and improvement of the Social Security programs (e.g., to the Bureau of the Census and private concerns under contract with SSA).

Other than the above limited circumstances, SSA will not redisclose without proper prior written consent information (1) relating to alcohol and/or drug abuse as covered in 42 CFR part 2, or (2) from educational records for a minor obtained under 34 CFR part 99 (Family Educational Rights and Privacy Act (FERPA)), or (3) regarding mental health, developmental disability, AIDS or HIV.

We may also use the information you give us when we match records by computer. Matching programs compare our records with those of other Federal, state, or local government agencies. Many agencies may use matching programs to find or prove that a person qualifies for benefits paid by the Federal government. The law allows us to do this even if you do not agree to it.

Explanations about possible reasons why information you provide us may be used or given out are available upon request from any Social Security Office.

## PAPERWORK REDUCTION ACT STATEMENT

This information collection meets the clearance requirements of 44 U.S.C. section 3507, as amended by section 2 of the Paperwork Reduction Act of 1995. You do not need to answer these questions unless we display a valid Office of Management and Budget control number. We estimate that it will take about 10 minutes to read the instructions, gather the facts, and answer the questions. **SEND OR DELIVER THE COMPLETED FORM TO YOUR LOCAL SOCIAL SECURITY OFFICE. The office is listed under U. S. Government agencies in your telephone directory or you may call 800 772-1213 for the address.** *You may send comments on our estimate of the time needed to complete the form to:*

SSA, *1338 Annex Building, Baltimore, MD  21235-0001. Send only comments relating to our time estimate to this address,* **not the completed form.**